## Bidding Procedures

1. To ensure that the Debtor receives the highest and best offer for the Assets, the Debtor intends to accept bids for the Assets and specifically requests that the following procedures be adopted for that purpose (the "Bidding Procedures"):

a. <u>The Sale Hearing</u>.  By this Motion, the Debtor requests that the Court set the sale hearing on the morning of Friday, May 27, 2011 (the "Sale Hearing").  At the Sale Hearing, the Debtor will seek entry of an order, among other things, authorizing and approving the sale of the Assets to the Successful Bidder (as defined herein), and authorizing and approving the sale of the Assets to the Backup Bidder (as defined herein) in the event that the Successful Bidder should fail to close on or before the Closing Date (as defined herein) (the "Sale Order").

b. <u>Closing Date</u>.  The closing date of the sale shall occur as soon as practicable after the Sale Hearing, but no later than Monday, June 20, 2011 (the "Closing Date") at 10:00 a.m. (Central).  Closing shall occur at the offices of the Debtor's counsel, Day, Rettig, and Peiffer, PC Suite 415 150 1st Ave. N.E., Cedar Rapids, Iowa 52401, or such other place as the Debtor and the Successful Bidder (as defined herein) agree.

c. <u>Bid Deadline/Sale Hearing Objection Deadline</u>.  In order to be included for consideration, bids must be received by Debtor's Agent, Equity Partners, Inc. (" EPI") with a copy to Debtor's counsel no later than 3:00 p.m. (Central) on Wednesday, May 25, 2011 (the "Bid Deadline").  Also, any objections to the Sale Hearing must be properly filed with the Court no later 3:00 p.m. (Central) on May 25, 2011.

d. <u>Bid Requirements</u>.  In order to be included for consideration, bids must meet the following "Bid Requirements":

i. Bids must be timely submitted in writing to EPI at the following address:

> Mr. Ken Mann
> Mr. Dan Rexford
> Equity Partners, Inc. of Maryland
> 101 N. West St.
> Easton, Maryland  21601
>
> With a copy to Debtor's counsel at the following address:
>
> Joseph Peiffer, Esq.
> Suite 415 150 1st Ave. N.E.
> Cedar Rapids, Iowa 52401

Exhibit "1"

    ii. Bids must comply with all conditions and requirements set forth in the Bidding Procedures.

    iii. Bids must be accompanied by a signed asset purchase agreement, a copy of which shall be attached to the bid.  Debtor's counsel shall draft the Asset Purchase Agreement that shall be supplied to interested bidders through EPI.  All bidders shall utilize the Asset Purchase Agreement supplied by EPI.  If a bidder wishes to make changes to the Asset Purchase Agreement it shall do so by making changes in redline so Debtor can clearly evaluate the changes requested by a bidder and compare the various bids it receives.  **Failure to provide a redlined copy of the Asset Purchase Agreement shall result in the Asset Purchase Agreement proposed by Debtor being utilized regardless of changes made by bidder.**

    iv. Bids must be accompanied by an executed confidentiality agreement in form and substance satisfactory to the Debtor, unless the Debtor is already in possession of an executed confidentiality agreement from the potential bidder.

    v. Bids must be accompanied by current financial statements or other financial information sufficient to satisfy the Debtor, its counsel and sales professionals of such bidder's ability to close a sale of its purchase of the Assets.  If the potential bidder is an entity formed for the purpose of acquiring the Assets, the Debtor may, at the Debtor's sole discretion, require comparable financial information from the equity holder(s) of the potential bidder, or such other form of financial disclosure acceptable to the Debtor and its advisors.

    vi. Bids must disclose the identity of the proposed purchaser and its principal investors and lenders as well as a written representation that the bidder has due authorization with respect to the submission of its bid and the consummation of the proposed transaction.

    vii. Bids must include an acknowledgment that the purchase price is to be payable in full in cash or certified funds on the Closing Date.

    viii. Bids must be accompanied by a good faith deposit in cash or certified funds in an amount not less than $200,000.00 (the "Good Faith Deposit").  Good Faith Deposits shall be held in escrow in EPI's trust account in accordance with the Bidding Procedures.

    ix. Bids must be accompanied by a list of the executory contracts and unexpired leases, if any, that the bidder desires the Debtor to assume and assign to the bidder with the cost of cure to be paid by the bidder at closing.

    x. Bids must be without any contingency for due diligence or financing, and other than the Stalking Horse Bid, if any, must be without any contingency for expense reimbursement, breakup, termination or similar fee or payment.

**Exhibit "1"**

   xi. The Debtor is specifically reserving (and is not selling) its accounts receivable to minimize the possibility of problems with PASA trust claims.

   xii. Bidders must designate whether they are bidding on one or more bid lots:  Lot 1 – all personal property including all machinery and equipment and supplies;  Lot 2 -  the real property; Lot 3 - intellectual property/trade names/general intangibles; and/or Lot 4 - inventory.

   xiii. Debtor shall have the right to accept bids on lots in the fashion that in its business judgment will maximize the recovery to the bankruptcy estate.

  e. <u>Qualified Bidder</u>.

   i. Any bidder who timely submits a bid which complies with the Bid Requirements set forth herein and whose financial information, in the Debtor's sole discretion, demonstrates the financial capability of the potential bidder to consummate the purchase contemplated shall be deemed by the Debtor to be a "Qualified Bidder" and the bid submitted by that party shall be a "Qualified Bid."

   ii. Only the Stalking Horse Bidder(s) (as defined herein), if any, and Qualified Bidders shall have the right and opportunity to submit additional bids at the auction and participate in the Auction (as defined herein).

   iii. All parties submitting bids are deemed to have submitted to the exclusive jurisdiction of the Bankruptcy Court with respect to all matters related to the sale and the terms and conditions of the transfer of the Assets.

  f. <u>Due Diligence</u>.  Each bidder is deemed to acknowledge and represent that it has had an opportunity to inspect and examine the Assets prior to making its offer, that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or assets in making its bid, and that it did not rely upon any written or oral statements, representations, promises, warranties or guarantees whatsoever, whether express, implied, by operation of law or otherwise, regarding the Assets, or the completeness of any information provided in connection therewith.

  g. <u>Determination of the Stalking Horse Bid(s)</u>.

   i. The Debtor shall determine, in its sole and absolute discretion, whether or not to designate up to four (4) "Stalking Horse Bids," up to one for each lot.  The proponent of Stalking Horse Bid(s), if any, shall be the "Stalking Horse Bidder(s)."

   ii. If the Debtor elects to designate a Stalking Horse Bid or Stalking Horse Bidders, it may do so any time on or before Wednesday, May 11, 2011at 12:00 p.m. (Central).

    iii. In order to be considered for Stalking Horse status, a potential bidder must meet the Bid Requirements of 2(d) herein, no later than Monday, May 9, 2011, at 4 p.m. (Central).  The deposit described in 2(d) (viii) shall be refundable if the Bidder withdraws its offer prior to 3 p.m. (Central) on May 18, 2011.

    iv. If the Debtor elects to designate a Stalking Horse Bid or Stalking Horse Bidders, subject to the removal of all contingencies, the Debtor shall file a "Notice of Designated Stalking Horse Bid(s)" with the Bankruptcy Court on or before Wednesday, May 11, 2011 at 3:00 p.m. (Central) and EPI shall provide notice of any Designated Stalking Horse bid(s) to all entities that had previously expressed an interest in bidding on the Debtor's assets..

    v. If a designated Stalking Horse Bidder(s) removes all contingencies from its Stalking Horse Bid(s), by Monday, May 18, it (they) shall be deemed the Stalking Horse(s) for the lot(s) upon which it (they) bid, was designated the Stalking Horse(s), and has removed all contingencies, and the Stalking Horse Bidder(s)' deposit(s) described in 2(d) (viii) shall become nonrefundable, except if the Debtor, through no fault of the Stalking Horse, does not close with the Stalking Horse by June 30, 2011.  If any Stalking Horse withdraws its bid, or is unable to remove all contingencies to the satisfaction of the Debtor by 3 p.m. (Central) on May 18, 2011, it will not be deemed a Stalking Horse. The Debtor shall file a "Final Notice of Stalking Horse Bid(s)" with the Bankruptcy Court on or before Tuesday, May 19, 2011 at 3:00 p.m. (Central), and EPI shall provide notice of any Final Stalking Horse bid(s) to all entities that had previously expressed an interest in bidding on the Debtor's assets.

    vi. Stalking Horse Bid(s), if any, shall be subject to higher and better offers and Qualified Bidders may continue to submit Qualified Bids after the Debtor files a Notice of Stalking Horse Bid(s).

  h. <u>Stalking Horse Protections</u>.

The Stalking Horse Bidder(s), if any, shall be entitled to a break-up fee in the amount of 2.5% of the Stalking Horse Bid(s) (the "Breakup Fee") to compensate it for its costs and expenses only if the Stalking Horse Bidder(s) are not the Successful Bidder(s) (as defined herein) at the Sale Hearing and the Debtor actually consummates the sale with a Successful Bidder other than the Stalking Horse Bidder(s); or

    i. The Stalking Horse Bidder(s) shall not be entitled to payment of the Breakup Fee in the event that it should choose to withdraw its bid for any reason prior to the Sale Hearing.  No bidder other than the Stalking Horse Bidder(s), if any, shall be entitled to a breakup fee, expense reimbursement, or similar fee or payment.

    i. "<u>As Is, Where Is</u>."  The sale of Assets shall be on an "as is, where is" basis and **without representations and warranties of any kind, nature or description by the Debtor, its agents, or its estate**, except to the extent set forth in the applicable Asset Purchase Agreement.  All of the Debtor's right, title and interest in

and to the respective assets shall be sold free and clear of all debts, claims, liabilities, obligations, restrictions, liens, charges, encumbrances or security interests of any kind except as may be specifically assumed by the Successful Bidder.

        j.        <u>Auction</u>.

        i.        After all Qualified Bids have been received, the Debtor may conduct an auction (the "Auction") with respect to the Assets. The Auction shall take place at 9:00 a.m. (Central) on Thursday May 26, 2011, at the Bankruptcy Courtroom located at 425 Second Ave. SE, Suite 800, Cedar Rapids, Iowa 52401, or such later time or other place as the Debtor shall notify all Qualified Bidders.

        ii.        Only the Stalking Horse Bidder(s), if any, and Qualified Bidders who have submitted a Qualified Bid are eligible to participate in the Auction. At the Auction, the Stalking Horse Bidder(s) and the Qualified Bidders will be permitted to increase their bids.

        iii.        If a Stalking Horse Bid for a particular lot is designated by the Debtor, the bidding for that bid lot(s) shall start at five percent (5%) higher than the purchase price stated in the Stalking Horse Bid and shall continue in increments as the Debtor shall determine in consultation with its counsel and sales professionals. If no Stalking Horse Bid was designated by the Debtor, the bidding shall start at the highest Qualified Bid and shall continue in increments as the Debtor shall determine in consultation with its counsel and sales professionals.

        iv.        Upon conclusion of the Auction or, if the Debtor determines not to hold an Auction, then promptly following the Bid Deadline, the Debtor, in consultation with its counsel and sales professionals, shall: (i) review each Qualified Bid on the basis of financial and contractual terms and the factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the sale with respect to the Assets, and the best interests of the Debtor and its estate; and (ii) identify the highest and best offer for the Assets (the "Successful Bid(s)"). The next highest or otherwise best bid(s) for each lot, as determined in the Debtor's sole discretion, shall be the "Backup Bid(s)" and the proponent of the Backup Bid(s) shall be the "Backup Bidder(s)."

        v.        At the Sale Hearing, the Debtor shall present the Successful Bid(s), and if any, the Backup Bid(s), to the Bankruptcy Court for approval.

        k.        <u>Return of Good Faith Deposit</u>. The Debtor shall return all Good Faith Deposits with the exception of the deposit of the Successful Bidder(s) and the Backup Bidder(s) within three (3) business days after the Sale Hearing. The Successful Bidder(s)'s Good Faith Deposit shall be credited against the purchase price and the Backup Bidder(s)'s Good Faith Deposit shall be returned within three (3) business days after the Closing Date. In any Successful Bidder(s) should fail to close on or before the Closing Date, the Successful Bidder(s) shall forfeit its Good Faith Deposit and the Backup Bidder for that lot(s) shall become the Successful Bidder with a closing to occur

not more than ten (10) business days after the date that the Backup Bidder is notified that it has become the Successful Bidder.

       l.      <u>Modification</u>.  The Bidding Procedures may be modified by the Debtor in its sole discretion based upon its reasonable business judgment after consultation with its counsel and sales professionals.

## Assignment of Executory Contracts and Leases

    2.    Along with the Asset Purchase Agreement the Debtor will provide copies of all unexpired leases and executory contracts.

       a.    As set forth in Paragraph 1(d)(xii) above, all bids will be accompanied by all unexpired leases and executory contract that the bidder identifies to be assumed and assigned to the Successful Bidder..

       b.    The Debtor shall use its reasonable best efforts to obtain entry of an order authorizing the assumption and assignment of the selected executory contracts and leases to the Successful Bidder at the Sale Hearing or a reasonable time thereafter.

       c.    The successful bidder will pay all costs to cure and provide adequate assurance of future performance for all unexpired leases and executory contracts assumed and assigned.

       d.    Notwithstanding the foregoing, the Debtor shall have no obligations to the Successful Bidder to assume and assign the selected executory contracts and leases absent Court approval of the same.

**Exhibit "1"**